IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| YOUNG CONSERVATIVES OF TEXAS, on behalf of its members, and DAVID SHEPHERD,<br><br>*Plaintiffs*,<br><br>v.<br><br>STEPHEN C. HEAD, in his official capacity as Chancellor of Lone Star College System and in his individual capacity; SEELPA KESHVALA, in her official capacity as President of Lone Star College-CyFair and in her individual capacity; BENNIE LAMBERT, in his official capacity as Vice President for Student Success of Lone Star College-CyFair and in his individual capacity,<br><br>*Defendants*. | Case No. 4:18-cv-286<br><br>VERIFIED COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Young Conservatives of Texas and David Shepherd, by and through counsel, and for their Complaint against Defendants hereby state as follows:

INTRODUCTION

1.     Public colleges and universities are supposed to be a "marketplace of ideas," where the young adults that are tomorrow's leaders are exposed to differing opinions and learn how the Constitution protects both their own rights and those of their classmates with whom they disagree. Lone Star College-CyFair ("LSC-CyFair") is teaching its students that the First Amendment does not apply to some government actors, granting them unbridled discretion to discriminate against student speech because of its viewpoint and depriving its students of the opportunity to be exposed to differing views.

2.     This is a civil action seeking injunctive and declaratory relief, to vindicate and safeguard Plaintiffs' fundamental rights as secured by the First and Fourteenth Amendments to the United States Constitution.

3.     LSC-CyFair enforces a policy for registration of student organizations (the "RSO

Policy") that regulates student organizations' access to certain speech forums, including meeting space, channels of communication, and student activity funding unavailable to other unregistered groups. However, LSC-CyFair affords unbridled discretion to those officials and students responsible for deciding which groups to approve, allowing Defendants to deny this critical status to any group because Defendants object to the group's views. Indeed, Defendants have employed this RSO Policy to exclude Young Conservatives of Texas from the opportunities available to all other student groups based on the viewpoint of its speech.

4.     LSC-CyFair also enforces a policy (the "Student Activity Fee Policy") that compels the members of Young Conservatives of Texas—including Plaintiff David Shepherd—to pay student activity fees every semester, but excludes the group from access to funding from those fees and allocates the student activity fees in a manner that favors those viewpoints Defendants wish to promote. As a result, Plaintiffs must fund the speech of groups that support liberal viewpoints but are denied access to this same funding to share their own opposing message.

5.     Defendants' policies and actions deprive Plaintiffs, and others similarly situated, of their fundamental rights under the United States Constitution.

6.     Each and every action of the Defendants alleged herein was committed by Defendants under the color of state law and authority.

## JURISDICTION & VENUE

7.     This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

8.     This Court has original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

9.     This Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201–2202, the requested injunctive relief under 28 U.S.C. § 1343(a)(3)–(4), the requested damages under 28 U.S.C. § 1343(a)(4), and attorneys' fees under 42 U.S.C. § 1988(b).

10.     Venue is proper in the United States District Court for the Southern District of Texas under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District and

because at least one Defendant resides in this District.

**PLAINTIFFS**

11.    Plaintiff Young Conservatives of Texas ("YCT") is a student-led, non-partisan, conservative, unincorporated expressive student organization comprised of Lone Star College students. It brings this action on behalf of itself and its individual student members.

12.    Plaintiff YCT seeks to reclaim its status as a registered student organization ("RSO") at LSC-CyFair.

13.    Plaintiff YCT seeks to avail itself of the meeting space, speech forums and other benefits and privileges that are available to RSO's at LSC-CyFair.

14.    Plaintiff YCT was granted RSO status but such status was later revoked by Defendants under policies created and enforced by Defendants.

15.    Mr. Shepherd and every student member of Plaintiff YCT pays mandatory student fees at LSC-CyFair.

16.    Mr. Shepherd and every student member of Plaintiff YCT is entitled to viewpoint neutral access to all forums available to RSO's, including access to student activity funding.

17.    Part of YCT's mission is to be an expressive student organization at LSC-CyFair and to protect its members' constitutional rights, including their rights to free speech and association, against compelled speech and funding of advocacy of liberal viewpoints, and to equal access to student organization funding.

18.    If YCT succeeds in this lawsuit, it will be able to obtain viewpoint neutral access to RSO status and to all benefits and privileges available to such groups, including meeting space, access to channels of communication and viewpoint neutral access to student activity fee funding.

19.    Plaintiff David Shepherd is, and at all times relevant to this Complaint was, the President of Young Conservatives of Texas and a student at LSC-CyFair.

20.    Mr. Shepherd compiled and submitted the required documentation to permit YCT to become an RSO.

21.    Mr. Shepherd pays mandatory student fees at LSC-CyFair and has paid this fee every

semester he has been enrolled. Mr. Shepherd, and each student member of YCT, pays a mandatory Student Activity Fee of $2.00 per credit hour each semester.

22.    Mandatory student fees paid by Mr. Shepherd and members of YCT have been and will be allocated to student groups for causes to which they object, including advocacy for the right to abortion and against their own pro-life views.

23.    Mr. Shepherd and members of YCT are entitled to the viewpoint neutral distribution of the mandatory student fees they have been and will be required to pay or to the repayment of fees they have paid. In addition, they cannot constitutionally be compelled to pay into a viewpoint discriminatory student organization funding system.

## DEFENDANTS

24.    Defendant Stephen C. Head is, and was at all times relevant to this Complaint, Chancellor of the Lone Star College System District (the "LSC District"), a public junior college district organized and existing under the laws of the State of Texas.

25.    Defendant Head is the Chief Executive Officer of the LSC District and is responsible for carrying out the policies and procedures of the Board of Trustees, including the RSO Policy and Student Activity Fee Policy and their application to Plaintiffs.

26.    Defendant Head acquiesces in, sanctions, and supports the actions of all Defendants, including the adoption of policies implementing the authority granted by the Board of Trustees Policy Manual and the enforcement of the RSO Policy and the Student Activity Fee Policy.

27.    Defendant Head has not instructed or requested that College officials or the other Defendants change or alter the RSO Policy or Student Activity Fee Policy to comply with constitutional requirements.

28.    Defendant Head has enforced the RSO Policy and the Student Activity Fee Policy in an unconstitutional manner because he has permitted College officials, including the other Defendants, to exercise unbridled discretion in enforcing the RSO Policy and the Student Activity Fee Policy.

29.    Defendant Head has responsibility and authority over the LSC-CyFair budget and

allocation of monies within LSC-CyFair, including the assessment of mandatory student fees and the allocation of student activity fee revenues to student organizations.

30.    Defendant Head is sued in his official and individual capacities.

31.    Defendant Seelpa Keshvala is, and was at all times relevant to this Complaint, the President of Lone Star College-CyFair, a college of the LSC District, a public junior college district organized and existing under the laws of the State of Texas.

32.    Defendant Keshvala is responsible for enactment, enforcement, administration and policymaking relating to students and student organizations, including the RSO Policy and the Student Activity Funding Policy, and practices implementing those policies.

33.    Defendant Keshvala has responsibility and authority over the LSC-CyFair budget and allocation of monies within LSC-CyFair, including the assessment of mandatory student fees and the allocation of student activity fee revenues to student organizations.

34.    As president of LSC-CyFair, Defendant Keshvala possesses the authority to change and is responsible for enforcement of the RSO Policy and the Student Activity Fee Policy.

35.    Defendant Keshvala has not instructed or requested that LSC-CyFair officials or the other Defendants change or alter the RSO Policy or Student Activity Fee Policy to comply with constitutional requirements.

36.    Defendant Keshvala is responsible for all policies and actions of the LSC-CyFair Office of Student Life and for creating, reviewing, changing, authorizing, and enforcing the policies or practices of that office, including the RSO Policy and the Student Activity Fee Policy and practices implementing those policies.

37.    Defendant Keshvala enforces the RSO Policy in an unconstitutional manner because she permits LSC-CyFair officials, including Defendant Lambert, to exercise unbridled discretion in implementing the RSO Policy, allowing denials or revocations of RSO status that are arbitrary and without justification and that result in viewpoint or content discrimination.

38.    Defendant Keshvala enforces the Student Activity Fee Policy that requires Mr. Shepherd and members of Plaintiff YCT to pay mandatory student fees and allows Defendants to exercise

5

unbridled discretion in allocating student activity fees, permitting discrimination against student groups on the basis of the viewpoint and content of their speech.

39.   Defendant Keshvala is sued in her official and individual capacities.

40.   Defendant Bennie Lambert is, and was at all times relevant to this Complaint, Vice President for Student Success at LSC-CyFair, a college of the LSC District, a public junior college district organized and existing under the laws of the State of Texas.

41.   Defendant Lambert is responsible for enactment, enforcement, administration and policymaking relating to students and student organizations, including the RSO Policy and the Student Activity Funding Policy, and practices implementing those policies.

42.   Defendant Lambert has the authority to recommend changes to and is responsible for enforcement of the RSO Policy and the Student Activity Fee Policy.

43.   Defendant Lambert is responsible for the administration and application of the RSO Policy and the Student Activity Fee Policy, granting Defendants unbridled discretion to grant, deny, or revoke registered student organization status in a content- and viewpoint-based manner, and requiring Mr. Shepherd and the members of Plaintiff YCT to pay mandatory student fees to support advocacy with which they disagree while granting unbridled discretion to distribute those fees in a viewpoint discriminatory manner.

44.   Defendant Lambert is responsible for overseeing the LSC-CyFair Office of Student Life and for creating, reviewing, changing, authorizing, and enforcing the policies of that office, including those concerning the registration of student organizations and the allocation of student activity fees to student organizations.

45.   Defendant Lambert enforces the RSO Policy in an unconstitutional manner because he exercises unbridled discretion and he permits other LSC-CyFair officials to exercise unbridled discretion in implementing the RSO Policy, allowing denials and revocations of RSO status that are arbitrary and without justification and that result in viewpoint or content discrimination.

46.   Defendant Lambert exercised this unbridled discretion to revoke Plaintiff YCT's status as a recognized student organization by withdrawing as YCT's advisor in retaliation for YCT

engaging in expressive activities protected by the First Amendment.

47.     Defendant Lambert enforces the Student Activity Fee Policy that requires Mr. Shepherd and members of Plaintiff YCT to pay mandatory student fees and allows Defendants to exercise unbridled discretion in allocating student activity fees, permitting discrimination against student groups on the basis of the viewpoint and content of their speech.

48.     Defendant Lambert is sued in his official and individual capacities.

**FACTUAL BACKGROUND**

49.     Lone Star College System District (the "LSC District") is a public junior college district organized and existing under the laws of the State of Texas, and receives funding from the State of Texas for its operations.

50.     The LSC District is composed of six different campuses: LSC-CyFair, LSC-Kingwood, LSC-Montgomery, LSC-North Harris, LSC-Tomball, and LSC-University Park.

51.     The LSC District is the largest institution of higher education in the Houston area with more than 98,000 students, and is one of the fastest-growing community college systems in the nation.

52.     The LSC District is governed by a Board of Trustees.

53.     The Board of Trustees has promulgated the Lone Star College System District Board Policy Manual (the "Board Policy Manual") that governs the LSC District, including LSC-CyFair. A true and correct copy of relevant portions of the Board Policy Manual are attached as Exhibit 1.

**I.     DEFENDANTS' REGISTERED STUDENT ORGANIZATION POLICY**

54.     LSC-CyFair operates a forum for registered student organizations because it recognizes that organized student groups are a valuable part of the student educational environment. While they do not speak for LSC-CyFair and LSC-CyFair is not responsible for the speech of student groups, they further LSC-CyFair's educational mission by fostering an environment of the open exchange of ideas on campus.

55.     Over seventy student organizations are currently granted RSO status and participate in this forum at LSC-CyFair, including sports teams and student groups representing a number of

political, religious, and other causes and views.

56.    Defendants have approved for RSO status one or more student organizations that advocate for liberal viewpoints and in opposition to the viewpoints of YCT.

57.    Defendants maintain and enforce several policies that govern this RSO forum, and these will be collectively referenced in this Complaint as their Registered Student Organization Policy (RSO Policy).

58.    As detailed in subsequent paragraphs, Defendants' RSO Policy consists of the following policies and practices:

      a.    Article VI.D.13. of the Board Policy Manual (Ex. 1);

      b.    The *Starting a Registered Student Organization* manual (the "LSC-CyFair RSO Manual"), a true and correct copy of which is attached hereto as Exhibit 2; and

      c.    The related policies and practices that govern the creation of a forum for registered student organizations at LSC-CyFair and the decision to grant or deny permission to student groups to participate in that forum.

**A.  Procedure for becoming an RSO and Defendants' unbridled discretion**

59.    As detailed in subsequent paragraphs, Plaintiffs challenge, facially and as-applied, the provisions of Defendants' RSO Policy that authorize the Defendants to exercise unbridled discretion in granting, denying, or revoking RSO status to student groups, allowing the Defendants to make decisions to grant, deny, or revoke RSO status that are arbitrary and without justification and that result in discrimination against applicants on the basis of the content and viewpoint of their expression.

60.    The Board Policy Manual creates the RSO forum and authorizes the official registration of student organizations. Ex. 1 § VI.D.13.01.

61.    The Board Policy Manual further instructs Defendant Head, as the Chancellor, to "develop and publish procedures to effectuate this policy." Ex. 1 § VI.D.13.03.

62.    Upon information and belief, Defendant Head delegates power to the President of each of the LSC District campuses to implement policies and procedures relating to the recognition of

student organizations for each individual campus.

63.   Pursuant to this authority, Defendants Keshvala and Lambert, through the Office of Student Life, developed and implemented the LSC-CyFair RSO Manual that sets out the policies and procedures for becoming an RSO at LSC-CyFair. *See* Ex. 2.

64.   Pursuant to the LSC-CyFair RSO Manual, the procedure for applying to become an RSO requires the following: (1) complete the Student Organization Application; (2) secure an advisor/sponsor; (3) identify at least eight students that are willing to enroll as members of the organization; (4) draft a constitution; and (5) submit the completed application packet to the Student Life office. Ex. 2.

65.   The advisor/sponsor must be a full-time faculty or staff member. Ex. 2.

66.   Upon information and belief, approximately 75% of the faculty are not qualified to serve as an advisor because they are considered part-time.

67.   After a completed application packet is submitted to the Student Life office, the application is then submitted to the Student Government Association ("SGA") for approval or denial. Ex. 2 at 3.

68.   All applications will be approved or denied during a Club Council meeting. Ex. 2 at 3.

69.   All applications must be approved by the SGA before an organization will be recognized as an RSO. Ex. 2 at 3.

70.   Neither the Handbook, nor any other policy, prescribes an appeal process for a group denied RSO status by the SGA.

71.   Neither the LSC-CyFair RSO Manual, nor any other published policy of LSC-CyFair, identifies any objective and exhaustive list of criteria to be applied by the SGA or any other officials in determining whether to approve a student organization's application for RSO status under the RSO Policy.

72.   Neither LSC-CyFair RSO Manual, nor any other published policy of LSC-CyFair, requires the SGA to detail the reasons it denies RSO status to a proposed interest group.

73.   Registration of a student organization makes it eligible for a wide variety of privileges

on campus, including: (1) use of LSC-CyFair facilities; (2) listed as part of the roster of official student organizations; (3) use of the services of the Office of Student Life; and (4) eligibility to submit a RSO Budget Request for funding from Student Activity Fees.

74.    A student organization is always denied registration if a faculty or staff member refuse to serve as the student organization's advisor.

75.    This policy and practice permits college staff to control the content and viewpoint of student organizations' expression.

76.    Once a student group has RSO status, staff members from the Office of Student Life assist it with planning meetings and events.

## II.    DEFENDANTS' STUDENT ACTIVITY FEE POLICY

77.    As part of its student organization forum, LSC-CyFair operates a funding forum for RSOs, using the mandatory student activity fees that each student pays each semester to facilitate the expression and activities of RSOs.

78.    Pursuant to the Student Activity Fee Policy, Defendants have created a forum for student speech.

79.    Pursuant to the Student Activity Fee Policy, Defendants have authority over the specific allocations of student activity fees to student groups, and therefore have control over the content and viewpoint of speech in the forum.

80.    Defendants maintain and enforce several policies that govern this funding forum, and these will be collectively referenced in this Complaint as the Student Activity Fee Policy.

81.    As detailed in subsequent paragraphs, Defendants' Student Activity Fee Policy consists of the following policies and practices:

    a.    Article VI.B.4.02 Board Policy Manual, Ex. 1;

    b.    The Lone Star College-CyFair Student Fee Memorandum (the "LSC-CyFair Student Fee Policy"), a true and correct copy of which is attached hereto as Exhibit 3; and

    c.    The related policies and practices that require mandatory student activity fees to be paid by all students, that create a forum for student speech by allowing registered

10

student organizations to apply for funding from those fees, and that authorize and create a system of unbridled discretion that permits their allocation in a content- and viewpoint-discriminatory basis.

82.  As detailed in subsequent paragraphs, Plaintiffs challenge, facially and as-applied, the provisions of Defendants' Student Activity Fee Policy that do the following:

  a. Make approval as an RSO a necessary qualification of eligibility for student activity funding where the RSO Policy affords unbridled discretion to deny this status based on the content or viewpoint of a group's speech. Ex. 3 § I.

  b. Afford LSC-CyFair officials unbridled discretion to grant or deny student activity fee funding to RSOs. Ex. 3 § V.

  c. Afford unbridled discretion by allowing LSC-CyFair to allocate student activity fee revenues based on their subjective assessment of (i) "the purposes or goals of the activities of the organization"; (ii) "the relatedness of the organization's goals to the mission of Lone Star College-CyFair"; (iii) "the relatedness of the organization's goals to the student activity fee"; (iv) the organization's "previous adherence to expectations, policies and procedures set by the Lone Star College System"; and (v) their subjective assessment of "the prior success of the organization in relation to planned programs and activities." Ex. 3 § V.

  d. Require Plaintiffs to pay a mandatory student activity fee where proceeds from this mandatory student activity fee may be allocated through unbridled discretion in a content- and viewpoint-discriminatory manner. Ex. 3 § V; Ex. 2.

**A.  Assessment of a Mandatory Student Activity Fee**

83.  The Board Policy Manual authorizes the assessment of mandatory "Student Activity Fees" required of all students. Ex. 1 § VI.B.4.02.

84.  The Board Policy Manual defines Student Activity Fees as "an every-semester fee per credit hour used to support student activities distinct from the College's regularly scheduled academic functions and that involve or benefit students." *Id.*

85.   LSC-CyFair requires all in-district students to pay a Student Activity Fee of $2.00 per credit hour per semester. A true and correct copy of the chart outlining Defendants' student activity fees is attached to this Complaint as Exhibit 4.

86.   Pursuant to the Student Activity Fee Policy, payment of the Student Activity Fee is mandatory and cannot be refunded.

87.   Over 18,000 students currently attend LSC-CyFair during the 2017–2018 academic year.

88.   Mr. Shepherd and each member of Plaintiff YCT will pay approximately $120 in mandatory Student Activity Fees to earn an Associate Degree at LSC-CyFair.

89.   Student Activity Fees are collected from every student and held by LSC-CyFair for distribution by the student government under authority delegated to them by the Board of Trustees. Ex. 1 § VI.B.4.02.

**B.  Process for allocating mandatory Student Activity Fees**

90.   The LSC-CyFair Student Fee Policy contains the policies and procedures applicable to allocating student activity fees to student organizations. Ex. 3.

91.   Only RSOs may apply for or receive allocations of Student Activity Fee proceeds. Ex. 3 at § I. a.

92.   The process begins with the RSO's submission of a budget request to the Center for Student Life before the budget request deadline. Ex. 3 at § IV.

93.   All budget requests must meet the standards of the described format to be considered by the Student Activity Fee Advisory Committee. *Id.*

94.   Once all budget requests are submitted, RSO advisors are notified of potential dates to present their budget requests to the Student Activity Fee Allocation Committee (the "Fee Committee"). *Id.*

95.   Each RSO will be required to present their budget request directly to the Fee Committee. *Id.*

96.    Each RSO must have a minimum of one student member and a maximum of two student members present their budget request to the Fee Committee. *Id.*

97.    After the presentations, the Fee Committee deliberates and makes recommendations as to each budget request. Ex. 3 § V.

98.    The Fee Committee forwards its recommendations to Defendant Lambert, as the Vice President of Student Success, and then to Defendant Keshvala, as President, for review and final approval. *Id.*

**C.  Defendants' Unbridled Discretion in Allocation of Student Activity Fees**

99.    The LSC-CyFair Student Fee Policy authorizes allocations for the following purposes:

1.  Recreational Activities
2.  Intercollegiate Athletics
3.  Intramural Activities
4.  Artist and Lecture Series
5.  Cultural Entertainment
6.  Debating and Oratorical Activities
7.  Student Organizations
8.  Student Publications
9.  Student Government
10. Student Transportation
11. New Student Activity Initiatives
12. Student Activities and Services Approved by the System
13. Fitness Center
14. Scholarships Directly Related to Activities
15. Salaries/Office Support of Student Life Staff

Ex. 3 § 3.

100.   The LSC-CyFair Student Fee Policy prohibits allocations for the following purposes: (1) Alumni Organizations; (2) Medical Services; (3) Child Care; (4) "Seed" Money for Student Organizations; (5) General Academic Scholarships; and (5) Instruction/Academic Courses or Programming. *Id.*

101.   The Fee Committee may consider the following factors in determining its recommendation whether to approve, modify, or deny a budget request: (i) "the purposes or goals of the activities of the organization"; (ii) "the relatedness of the organization's goals to the mission of Lone Star College-CyFair"; (iii) "the relatedness of the organization's goals to the student activity fee"; (iv) the organization's "previous adherence to expectations, policies and procedures set by the Lone Star College System"; and (v) their subjective assessment of "the prior success of

13

the organization in relation to planned programs and activities." *Id.* at § V.

102. The Fee Committee may not consider the following factors in determining its recommendation: (i) "the amount of funds RSOs have received in previous years"; (ii) "the amount of time RSOs have received funding"; and (iii) "the size of the organization's membership." *Id.*

103. No exclusive list of published standards exists to guide the discretion of the Fee Committee or Defendants Lambert and Keshvala in determining whether an RSO should receive funding and at what level.

### III. BACKGROUND ON YOUNG CONSERVATIVES OF TEXAS

104. Plaintiff Young Conservatives of Texas is a nonprofit, student-led expressive student group comprised of students attending LSC-CyFair.

105. Mr. Shepherd is the President of YCT and a student at LSC-CyFair.

106. YCT desires to be a registered student organization at LSC-CyFair and to fully participate in the forum for registered student organizations and the student activity fee funding forum.

107. The purpose of YCT is to shape the policies of Texas through a number of means including educating students and the public, advocating for conservative fiscal and social policies, and campus activism.

108. YCT intends to express its conservative message on LSC-CyFair's campus through means including distributing flyers, displaying signs, holding peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students about its conservative views.

109. When engaging in these expressive activities, YCT and its members, including Mr. Shepherd, address political, religious, social, cultural, and moral issues, events, and ideas relating to its conservative message.

110. YCT intends to engage in these expressive activities this year and continuing into the future.

### IV. DEFENDANTS' REVOCATION OF REGISTERED STUDENT ORGANIZATION STATUS (AND THUS, ELIGIBILITY FOR FUNDING) TO YOUNG CONSERVATIVES OF TEXAS

111.  In the Spring of 2017, Mr. Shepherd began the process of completing the application to register YCT as an official registered student organization.

112.  As required by the RSO Policy, Mr. Shepherd began searching for an individual to serve as an advisor. Mr. Shepherd contacted more than 15 faculty members and other full-time employees inquiring whether they would serve as advisor for YCT. However, they all declined to serve as advisor. Several indicated that it was because they disagreed with YCT's political views or they were concerned about the potential consequences to their standing at the College if they were to become associated with YCT's political views.

113.  Mr. Shepherd informed Defendant Lambert that he was unable to obtain an advisor and requested that Defendant Lambert appoint an advisor for the group.

114.  Defendant Lambert agreed to serve as an advisor for YCT because YCT was unable to secure another advisor.

115.  In the Spring of 2017, YCT became a recognized student organization at LSC-CyFair.

116.  On November 1, 2017, YCT hosted a debate on campus entitled "Is it Moral to Have an Abortion?" The debate was between Eric Hernandez, a Christian pro-life apologist, and Heather Busby, NARAL Executive Director Pro-Choice Texas.

117.  YCT obtained permission from Mr. Hernandez and Ms. Busby to video record the debate.

118.  LSC-CyFair indicated that it did not have the necessary equipment to video record the debate.

119.  YCT procured the necessary equipment to video record the debate.

120.  Professor Melanie Steel attended the debate as an advisor for YCT because Defendant Lambert was unable to attend.

121.  When Professor Steel arrived at the debate, she informed Mr. Shepherd that YCT would not be allowed to video record the debate.

122.  After Mr. Shepherd objected to this unconstitutional restriction, Professor Steel contacted Defendant Lambert by telephone to discuss the dispute.

123.  Although he was not required to do so, Mr. Shepherd agreed to provide a copy of the video to Defendant Lambert prior to its distribution.

124.  Defendant Lambert agreed to allow YCT to video record the debate.

125.  The debate proceeded and was attended by approximately 100 students. YCT video recorded the debate.

126.  On December 14, 2017, Mr. Shepherd e-mailed a link of the video to Defendant Lambert and Professor Steel.

127.  On December 16, 2017, YCT posted an 8-minute highlight video of the debate to its Facebook page.

128.  On December 18, 2017, Defendant Lambert sent the following e-mail to Mr. Shepherd:

> "I just learned that you or someone you authorized, posted the College Conservatives (student club) Abortion Dialogue video.
> This was not, and would not be approved by your club advisor for such posting.
> I will certainly need to visit with you upon your return to the college in January."

129.  On January 24, 2018, Mr. Shepherd attended the Club Rush event at LSC-CyFair to promote YCT to new students.

130.  Defendant Lambert confronted Mr. Shepherd about posting the video. Defendant Lambert stated that he was resigning as advisor because he did not authorize YCT to post the video.

131.  Defendant Lambert stated that it was clear to him that YCT's mission did not align with the mission of LSC-CyFair.

132.  Defendant Lambert further stated that YCT would be unable to host future events on campus because it is no longer a recognized student organization.

133.  Defendants' policies and practices grant advisors discretion to discriminate against student organizations based on content and viewpoint.

134.  Defendants' policies and practices permitted Defendant Lambert to discriminate against Plaintiffs' expression based on its content and viewpoint.

135.  Defendants derecognized Plaintiff YCT because of Plaintiffs' expression and its content and viewpoint.

136.  YCT has already scheduled a debate for April 6 between Eric Hernandez, a Christian apologist, and Dan Barker, President of Freedom From Religion Foundation. The debate was to be entitled: "What Better Explains Reality: Atheism or Theism?"

137.  As a result of the revocation of its recognized status, YCT is unable to host the debate on campus.

138.  YCT still desires to host this debate and other debates and similar events discussing important political, social, and religious topics.

## V.  THE EFFECT OF DEFENDANTS' POLICIES AND ACTIONS ON PLAINTIFFS' EXPRESSION

139.  Because YCT has been denied RSO status it lacks access to the RSO forum and to the benefits and privileges that RSOs receive.

140.  YCT operates at a disadvantage to other registered student groups that have been granted RSO status and the benefits of registration, including student organization funding.

141.  Because YCT was denied RSO status, it is ineligible to receive student activity funding under the Student Activity Fee Policy.

142.  As a result of the Defendants' revocation of its registered student organization status, YCT is unable to or restricted in its ability to accomplish its mission, including through each of the following:

    a.  Use college facilities for its meetings.

    b.  Bring high profile speakers to campus to provide a conservative perspective on important political and social issues of the day.

    c.  Receive funding through Student Activity Fees to permit the group to bring speakers, hold events, and promote their conservative message.

143.  As a result of the revocation of its RSO status, YCT will be forced to replace any student activity funding it would have received through other sources.

144.  Were it afforded RSO status, YCT would avail itself of the benefits, privileges, and

channels of communication available to RSOs, including applying for student activity funding.

145.  Defendants' policies and practices permit advisors to control, and discriminate based on, the content and viewpoint of student organizations' expression because student organizations are required to have a full-time faculty or staff advisor in order to be recognized and receive the benefits of RSO status.

146.  Defendants revoked Plaintiff YCT's RSO status under their policies and practices because of Plaintiffs' expression.

### ALLEGATIONS OF LAW

147.  All of the acts of Defendants, their officers, agents, employees, and servants, were executed and are continuing to be executed by the Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Texas.

148.  The Defendants act under color of state law when carrying out their duties and functions delegated to them by the other Defendants pursuant to the RSO Policy and Student Activity Fee Policy.

149.  Defendants and the Student Activity Fee Committee act under color of state law when carrying out their duties and functions delegated to them by the other Defendants pursuant to the Student Activity Fee Policy.

150.  Defendants are not engaging in government speech in their decision to recognize, deny, or revoke recognition to student organizations pursuant to the RSO Policy or to permit an organization to receive student activity fee funding pursuant to the Student Activity Fee Policy.

151.  Defendants knew or should have known that by requiring YCT to obtain a full-time faculty or staff member to be an advisor in order to be a recognized student organization that they violated Plaintiffs' constitutional rights.

152.  Defendants' advisor requirement constitutes a prior restraint on student speech and association by conditioning the recognition of student organizations on first obtaining a government official to act as an advisor to their organization.

153.  Defendants knew or should have known that by subjecting YCT to a system of unbridled

discretion in order to be recognized as a student organization that they violated the Plaintiffs' constitutional rights.

154. Defendants' advisor requirement grants unbridled discretion to College officials to manipulate or control student speech or to silence that speech altogether by allowing College officials to refuse to serve as an advisor simply because the official disagrees with the organization's speech.

155. Defendants knew or should have known that by revoking YCT's RSO status without justification that it violated its constitutional rights.

156. Defendants knew or should have known that by excluding student organizations from receiving student activity fee funding through a system of unbridled discretion that they violated Plaintiffs' constitutional rights.

157. Defendants knew or should have known that by requiring Mr. Shepherd and the members of YCT to pay student activity fees for the support of groups whose views they do not wish to support while funding groups with those funds through a viewpoint discriminatory system that affords unbridled discretion to allocate student activity fees, Defendants violated Plaintiffs' constitutional rights.

158. The RSO Policy and Student Activity Fee Policy which Defendants applied to violate Plaintiffs' constitutional rights remain in full force and effect.

159. Plaintiffs are suffering irreparable harm from the RSO Policy, Student Activity Fee Policy, and the conduct of Defendants, which cannot be fully compensated by an award of money damages.

160. Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

161. Plaintiffs have suffered and will continue to suffer economic injury, including by being subject to mandatory student activity fees and being denied the opportunity to receive student activity fee funding.

162. Defendants have deprived, and continue to deprive, Plaintiffs of their clearly established

rights under the United States Constitution, as set forth in the causes of action below.

163.  Unless the conduct of Defendants is enjoined, Plaintiffs will continue to suffer irreparable injury.

### FIRST CAUSE OF ACTION
**Violation of Plaintiff YCT's
First Amendment Right of Association**

164.  Plaintiff YCT repeats and realleges each of the allegations contained in paragraphs 1-163 of this Complaint.

165.  The First Amendment of the United States Constitution, incorporated and made applicable to Defendants through the Fourteenth Amendment, guarantees Plaintiff the right of association.

166.  A college's denial of registration of a student organization without justification burdens and abridges the right of association.

167.  A college's denial of a student group's access to meeting space and other benefits and privileges of registration, including the channels of communication available to other student groups on its campus, burdens and abridges the right of association.

168.  The requirement to obtain an advisor prior to granting a student group registration is a form of prior restraint, placing a heavy burden on the college to justify its denial of recognition.

169.  Defendants' advisor requirement constitutes a prior restraint on student speech and association by conditioning the recognition of student organizations on first securing the agreement of a government official to act as an advisor to their organization and by allowing the government official to decline to act as an advisor if the official disagrees with the viewpoint of the organization's speech.

170.  Once a student group obtains registered status with a college, the burden is upon the college to justify revocation of such status.

171.  The revocation of registered student organization status to a student organization is a form of prior restraint, placing a heavy burden on the college to justify its denial of registration.

172.  The content or viewpoint of a student group's expression are invalid bases for revoking or denying a student group registration.

173.  Defendants revoked YCT's RSO status.

174.  Defendants' revocation of YCT's RSO status was content and viewpoint discrimination.

175.  Because of Defendants' revocation of YCT's RSO status, the group is ineligible to reserve meeting space for the organization and for its events and is excluded from channels of communication available to other student groups on campus.

176.  Because of Defendants' revocation of YCT's RSO status, the group is hindered in its ability to communicate with other students on campus and to remain a viable entity in the LSC-CyFair community.

177.  Defendants have no legitimate or compelling reason for revoking YCT's RSO status.

178.  YCT is unable to secure an advisor pursuant to the requirements imposed by the RSO Policy because the vast majority of the eligible College officials disagree with YCT's beliefs and views.

179.  The RSO Policy does not require that Defendants appoint an advisor for YCT if YCT is unable to do so after making reasonable efforts to obtain an advisor.

180.  The RSO Policy does not require that Defendants provide any justification for the revocation of RSO status.

181.  The RSO Policy does not provide any right to appeal a decision to deny RSO status to a student group.

182.  The RSO Policy affords unbridled discretion to grant, deny, or revoke RSO status to Defendants.

183.  The RSO Policy makes key benefits and privileges, including the ability to reserve meeting space, invite certain speakers, and use channels of communication, available only to RSOs, denying those benefits and privileges to groups that are denied RSO status.

184.  Accordingly, Defendants' RSO Policy, facially and as applied to YCT, violates the First Amendment right of association.

185. Because of Defendants' actions, Plaintiff YCT has suffered, and continues to suffer, economic injury and irreparable harm. It is entitled to an award of monetary damages and equitable relief.

186. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated their First Amendment right to freedom of association and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
**Violation of Plaintiff YCT's**
**First Amendment Right to Freedom of Speech**
**Unbridled Discretion and Viewpoint- and Content-Discrimination**

187. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–163 of this Complaint.

### RSO Policy

188. The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and viewpoint discrimination by a public college or university in its decision to provide registered student organization status to a student group and to provide access to the benefits, privileges, and forums available to registered student organizations.

189. The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits viewpoint discrimination in a public forum created for student speech.

190. When a public college or university registers student organizations and makes benefits, privileges, and access to speech forums available to those registered student organizations, it creates a public forum for student speech and expression.

191. The government is not speaking its own message when it registers student organizations or extends to them certain benefits and privileges of that status.

22

192.  The government's ability to restrict speech in a public forum is limited.

193.  A public college or university may not apply content-based or viewpoint-based standards in registering student organizations.

194.  The RSO Policy creates a public forum for student speech.

195.  The requirement to obtain an advisor prior to granting a student group registration is a form of prior restraint, placing a heavy burden on the college to justify its denial of recognition.

196.  Defendants' advisor requirement constitutes a prior restraint on student speech by conditioning the recognition of student organizations on first obtaining a government official to act as an advisor to their organization and by allowing the government official to decline to act as an advisor if the official disagrees with the viewpoint of the organization's speech.

197.  The RSO Policy affords Defendants and other College officials unbridled discretion to grant, deny, or revoke registration to a student group, permitting discrimination against a student group because of the content and viewpoint of its speech.

198.  Defendants' advisor requirement grants unbridled discretion to College officials to manipulate or control student speech or to silence that speech altogether by allowing College officials to refuse to serve as an advisor simply because the official disagrees with the organization's speech.

199.  The lack of objective criteria, factors, or standards for determining whether a group may be an RSO and participate in that forum for student speech gives government officials unbridled discretion to exclude or prohibit speech based on its content or viewpoint in violation of the First Amendment.

200.  The lack of a process to remove officials who violate viewpoint neutrality when deciding whether a student organization will be registered demonstrates that the government has unbridled discretion to govern the speech forum.

201.  The lack of recorded meetings and written explanations of their decisions by officials charged with determining whether student organizations may be registered demonstrates that the government has unbridled discretion to govern the speech forum.

202.  The lack of an appeal process in a student organization registration forum demonstrates that the government has unbridled discretion to govern the speech forums.

203.  Defendant Lambert's decision to withdraw as advisor, causing YCT to lose its recognized status, based upon his disagreement with YCT's expressive activity in posting a video demonstrates that the government has unbridled discretion to govern the speech forum.

204.  YCT is unable to secure an advisor pursuant to the requirements imposed by the RSO Policy because the vast majority of the eligible College officials disagree with YCT's beliefs and views.

205.  Defendants' RSO Policy confers unbridled discretion on Defendants or other officials charged with determining whether to revoke a student group's RSO status to suppress and/or discriminate against disfavored speech because of its content or viewpoint.

206.  Defendants' RSO Policy provides no process through which an official may be removed for violating the constitutional prohibition against viewpoint discrimination.

207.  Defendants' RSO Policy does not provide that all of its meetings and deliberations regarding RSO recognition be open to the public, recorded, or that minutes be publicly available.

208.  Defendants' RSO Policy does not provide student organizations with the ability to appeal decisions to deny or revoke a group's registered status.

209.  The RSO Policy does not require that Defendants appoint an advisor for YCT if YCT is unable to do so after making reasonable efforts to obtain an advisor.

210.  Defendants' RSO Policy does not require that student groups be provided a rationale for the decision to deny or revoke the group RSO status.

211.  Defendants' revocation of registered student organization status to YCT and its exclusion from receiving student activity funding served no legitimate purpose.

212.  Accordingly, Defendants' RSO Policy and their enforcement of this policy against Plaintiffs violated Plaintiffs' rights to freedom of speech guaranteed by the First Amendment.

213.  Defendants' revocation of YCT's registered student organization status was viewpoint and content discriminatory.

214.  Defendants' revocation of YCT's RSO status fails to satisfy strict scrutiny because it is not narrowly tailored to promote a compelling government interest.

215.  Defendants' revocation of YCT's registered student organization status was unreasonable.

**Student Activity Fee Policy**

216.  The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits a public college or university from permitting viewpoint discriminatory allocation of student activity funding.

217.  When a public college or university collects mandatory student fees and allows registered student organizations to apply for funding from those student fees, it creates a public forum for student speech and expression.

218.  When the government allocates funds collected through mandatory student activity fees to student organizations and those student organizations use those funds for their own expressive activities, the government is not speaking its own message.

219.  A student organization's use of funding obtained through mandatory student fees to promote its own views is a form of protected speech.

220.  A public college or university may not apply content-based or viewpoint-based standards in allocating student organization funding derived from mandatory student fees.

221.  The Student Activity Fee Policy creates a public forum for student speech.

222.  Because the RSO Policy affords Defendants and other College officials unbridled discretion to grant or deny registration to a student group, permitting discrimination against a student group because of the content and viewpoint of its speech, and because the Student Activity Fee Policy limits eligibility to RSOs, the Student Activity Fee affords unbridled discretion to exclude student groups from receipt of funding based on the content and viewpoint of their speech.

223.  The lack of objective criteria, factors, or standards for determining whether an RSO may receive funding under the Student Activity Fee Policy and at what level gives officials unbridled discretion to discriminate against speech based on its content or viewpoint in violation of the First

Amendment.

224.  The lack of a process to remove officials who violate content and viewpoint neutrality when deciding whether an RSO will receive Student Activity Fee funding and at what level demonstrates that the government has unbridled discretion to govern the speech forum.

225.  Defendants' Student Activity Fee Policy confers unbridled discretion on Defendants or other officials charged with determining whether a student group will receive Student Activity Fee funding to suppress and/or discriminate against disfavored speech because of its content or viewpoint.

226.  Defendants' Student Activity Fee Policy provides no process through which an official may be removed for violating the constitutional prohibition against content or viewpoint discrimination.

227.  The Student Activity Fee Policy permits Defendants and other officials to evaluate the content and viewpoint of student organizations' speech by reviewing "the purposes or goals of the activities of the organization," the "relatedness of the organization's goals to the mission of Lone Star College-CyFair," "the relatedness of the organization's goals to the student activity fee," the organization's "previous adherence to expectations, policies and procedures set by the Lone Star College System," and their subjective assessment of "the prior success of the organization in relation to planned programs and activities," while providing no objective criteria to bridle discretion in evaluating these factors.

228.  Defendants' exclusion of YCT from the opportunity to apply for student activity fee funding is viewpoint and content discriminatory.

229.  Defendants' Student Activity Fee Policy and the exclusion of YCT from the opportunity to apply for Student Activity Fee funding fail to satisfy strict scrutiny because it is not narrowly tailored to promote a compelling government interest.

230.  Defendants' Student Activity Fee Policy and the exclusion of YCT from the opportunity to apply for Student Activity Fee funding is content and viewpoint discriminatory and unreasonable.

231.  The lack of objective criteria, factors, or standards for determining whether a group may receive Student Activity Fee funding and at what level gives government officials unbridled discretion to exclude, prohibit, or disadvantage speech based on its content or viewpoint in violation of the First Amendment.

232.  Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

233. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its First Amendment right to freedom of speech and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
**Violation of Plaintiffs' First Amendment Right to Freedom of Speech**
**Compelled Speech**

234.  Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-163 of this Complaint.

235.  The First Amendment's Freedom of Speech Clause prohibits the government from compelling citizens to express or support a message not of their own choosing.

236. The First Amendment's Freedom of Speech Clause prohibits public colleges or universities from collecting a mandatory student fee that is used to fund student organization speech, if that mandatory student fee is not allocated in a viewpoint neutral manner.

237.  Through the Student Activity Fee Policy, Defendants compel Plaintiff David Shepherd, the other members of Plaintiff YCT, and all LSC-CyFair students to pay a mandatory student fee that is used in part to fund student organization speech on campus in a content and viewpoint discriminatory manner.

238. Because the RSO Policy affords Defendants and other College officials unbridled discretion to grant or deny registration to a student group, permitting discrimination against a

student group because of the content and viewpoint of its speech, and because the Student Activity Fee Policy limits eligibility to RSOs, the Student Activity Fee affords unbridled discretion to exclude student groups from receipt of funding based on the content and viewpoint of their speech.

239.  The lack of objective criteria, factors, or standards for determining whether an RSO may receive funding under the Student Activity Fee Policy and at what level gives officials unbridled discretion to discriminate against speech based on its content or viewpoint in violation of the First Amendment.

240.  The lack of a process to remove officials who violate content and viewpoint neutrality when deciding whether an RSO will receive Student Activity Fee funding and at what level demonstrates that the government has unbridled discretion to govern the speech forum.

241.  Defendants' Student Activity Fee Policy confers unbridled discretion on Defendants or other officials charged with determining whether a student group will receive Student Activity Fee funding to suppress and/or discriminate against disfavored speech because of its content or viewpoint.

242.  Defendants exclude YCT from the opportunity to apply for student activity fee funding because of the content and viewpoint of its speech.

243.  Defendants' Student Activity Fee Policy and the exclusion of YCT from the opportunity to apply for Student Activity Fee funding fail to satisfy strict scrutiny because it is not narrowly tailored to promote a compelling government interest.

244.  Defendants' Student Activity Fee Policy and the exclusion of YCT from the opportunity to apply for Student Activity Fee funding is content and viewpoint discriminatory and unreasonable.

245.  The lack of objective criteria, factors, or standards for determining whether a group may receive Student Activity Fee funding and at what level gives government officials unbridled discretion to exclude, prohibit, or disadvantage speech based on its content or viewpoint in violation of the First Amendment.

246.  Defendants' Student Activity Fee Policy compels Mr. Shepherd and the student members

28

of Plaintiff YCT to fund and support speech and viewpoints with which they disagree and which they find offensive and objectionable.

247.  Pursuant to the Student Activity Fee Policy and the RSO Policy, Defendants engage in content- and viewpoint-based discrimination by denying registered student organization status to YCT and by funding expressive activities of other student organizations at the College, but not Plaintiffs because of the content and viewpoint of their expression.

248.  Defendants apply the Student Activity Fee Policy and the RSO Policy in a discriminatory manner, allowing other student organizations to receive student activity fee funding, allowing other groups to share their views on the same or similar topics that Plaintiffs wish to address while denying YCT the opportunity to receive student activity funding for their expression.

249.  Accordingly, Defendants' Student Activity Fee Policy and the RSO Policy violate Plaintiffs' right to freedom of speech guaranteed by the First Amendment.

250.  Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

251.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment right to freedom of speech and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court for student activity fees paid and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION
### Violation of Plaintiff YCT's
### Fourteenth Amendment Right to Due Process of Law

252.  Plaintiff YCT repeats and realleges each of the allegations contained in paragraphs 1-163 of this Complaint.

253.  The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the right to due process of law and prohibits Defendants from promulgating and employing vague

standards that allow for content and viewpoint discrimination in determining whether to approve, deny, or revoke YCT's application for RSO status and to provide it Student Activity Fee funding.

254.  The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

255.  The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

256.  The government may not regulate speech based on policies that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

257.  The RSO Policy contains no criteria to guide decision makers in determining whether to grant, deny, or revoke a student group RSO status.

258.  The RSO Policy does not require that student groups be informed of the basis for the decision to deny or revoke their RSO status.

259.  The RSO Policy does not provide for any right of appeal of a student group whose RSO status is revoked or denied.

260.  The RSO Policy does not require that meetings where decisions about registered status of a prospective RSO are made be recorded or minutes taken and made publicly available.

261.  The RSO Policy does not provide for the removal of any College officials or other decisionmakers who have abused their authority or violated the Constitutional rights of a student group.

262.  The Student Activity Fee Policy provides no process through which an official may be removed for violating the constitutional prohibition against content or viewpoint discrimination.

263.  Defendants' RSO Policy and Student Activity Fee Policy are impermissibly vague and ambiguous and are thus incapable of providing meaningful guidance to Defendants or allowing Plaintiff to conform its conduct.

264.  The RSO Policy is impermissibly vague and ambiguous because it broadly authorizes Defendants to deny or revoke registered student organization status to groups for any reason or no reason at all, providing no objective criteria upon which to make this determination and no

opportunity for Plaintiffs to conform their actions so as to participate in the forum.

265. The Student Activity Fee Policy is impermissibly vague and ambiguous because it excludes student organizations from receiving an allocation of student activity fees because they have not been registered pursuant to the vague and ambiguous RSO Policy.

266. The Student Activity Fee Policy is impermissibly vague and ambiguous because it permits Defendants and other officials to evaluate the "the purposes or goals of the activities of the organization," "the relatedness of the organization's goals to the mission of Lone Star College-CyFair," "the relatedness of the organization's goals to the student activity fee," the organization's "previous adherence to expectations, policies and procedures set by the Lone Star College System," and their subjective assessment of "the prior success of the organization in relation to planned programs and activities," while providing no objective definitions of these terms.

267. Defendants' decision to revoke Plaintiff's RSO status was arbitrary and capricious, and without legitimate or lawful justification.

268. Defendants' decision to revoke Plaintiff YCT's RSO status denied Plaintiffs rights and benefits under the United States Constitution without due process of law.

269. Because of Defendants' actions pursuant to the RSO Policy and Student Activity Fee Policy, Plaintiff YCT has suffered, and continues to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

270. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to due process of law and an injunction against Defendants' RSO Policy and Student Activity Fee Policy. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

### FIFTH CAUSE OF ACTION
**Violation of Plaintiff YCT's**
**Fourteenth Amendment Right to Equal Protection of the Law**

271. Plaintiff YCT repeats and realleges each of the allegations contained in paragraphs 1-163

of this Complaint.

272. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the equal protection of the law, which prohibits Defendants from treating Plaintiff differently than similarly situated student organizations.

273. The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

274. Plaintiff YCT is similarly situated to other student organizations seeking registered student organization status and to other registered student organizations at the College, including RSOs that advocate for liberal political viewpoints.

275. Pursuant to the RSO Policy and Student Activity Fee Policy, Defendants grant registered student organization status and grant mandatory student fee funding to other similar student organizations, but revoked Plaintiff's RSO status.

276. Pursuant to the RSO Policy and the Student Activity Fee Policy, Defendants grant registered status and its benefits, privileges and access to speech forums, and do and will grant mandatory student fee funding to other students organizations advocating viewpoints on political, ideological, and social issues, but revoked YCT's RSO status and the opportunity to seek student activity funding to Plaintiff because of its views and in retaliation for expressing its views on those issues.

277. Pursuant to the RSO Policy and the Student Activity Funding Policy, Defendants treated Plaintiff disparately when compared to similarly situated student organizations by revoking Plaintiff's RSO status and the opportunity to apply for student activity funding.

278. Defendants' RSO Policy and Student Activity Fee Policy violate various fundamental rights of Plaintiff, including freedom of association, freedom of speech and due process of law.

279. When government regulations, like Defendants' RSO Policy and Student Activity Fee Policy, infringe on fundamental rights, discriminatory intent is presumed.

280. Defendants' RSO Policy and Student Activity Fee Policy have been applied to

discriminate intentionally against Plaintiff's rights to freedom of association, freedom of speech, and due process of law.

281. Defendants lack a rational or compelling state interest for their disparate treatment of Plaintiff.

282. Defendants' RSO Policy and Student Activity Fee Policy, and their application to Plaintiff are not narrowly tailored as applied to Plaintiff because Plaintiff's speech does not implicate any legitimate interest of Defendants.

283. Defendants have applied the RSO Policy and the Student Activity Fee Policy to Plaintiff in a discriminatory and unequal manner, allowing other student organizations to receive RSO status and its benefits, privileges and speech forum access and to receive funding to speak on topics while denying those same opportunities to Plaintiff, in violation of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment.

284. Because of Defendants' actions pursuant to the RSO Policy and the Student Activity Fee Policy, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. It is entitled to an award of monetary damages and equitable relief.

285. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to equal protection of law and an injunction against Defendants' RSO Policy and Student Activity Fee Policy. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION
### Violation of Plaintiffs' First Amendment Right to be Free from Retaliation

286. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–163 of this Complaint, as if set forth fully herein.

287. The First Amendment's Free Speech Clause prohibits the government from taking any retaliatory actions against citizens because they exercised their constitutional rights, including their right to free speech.

288.  By revoking Plaintiff YCT's registered student organization status because Plaintiffs exercised their First Amendment rights by posting the video of the abortion debate, Defendants by policy and practice have retaliated against Plaintiffs because of their free expression and deprived them of their ability to express their ideals freely on the LSC-CyFair campus.

289.  Plaintiffs' posting of the video constitutes expression that the First Amendment clearly protects.

290.  Defendants impeded Plaintiffs' exercise of their First Amendment rights by revoking YCT's recognized student organization status which precludes it from the ability to reserve meeting space, invite certain speakers, use channels of communication available only to RSOs, and makes it ineligible to obtain student activity fee funding.

291.  Defendants have knowingly and intentionally punished Plaintiffs for engaging in protected expression by revoking its RSO status.

292.  Defendants' actions to punish Plaintiffs for exercise their free speech rights constitutes adverse actions that would chill a student of ordinary firmness from exercising his free speech rights in the future.

293.  Defendants' actions to impede Plaintiffs' activities and to punish them for those activities are substantially motivated as a response to Plaintiffs' exercise of its First Amendment rights.

294.  Defendants took the actions to impede Plaintiffs' activities and are taking the actions to harass and punish Plaintiffs for those activities as a function of the unbridled discretion that LSC-CyFair's policies grant them.

295.  Defendants took the actions to impede Plaintiffs' activities and are taking the actions to harass and punish Plaintiffs for those activities due to the content and viewpoint of Plaintiffs' expression.

296. Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

297. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that

Defendants violated their First Amendment right to be free from retaliation and an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A. A declaratory judgment that Defendants' RSO Policy, facially and as-applied, violates YCT's rights under the First and Fourteenth Amendment;

B. A declaratory judgment that Defendants' Student Activity Fee Policy, facially and as-applied, violates Plaintiffs' rights under the First and Fourteenth Amendment;

C. A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf from enforcing the RSO Policy and the Student Activity Fee Policy challenged in this Complaint;

D. A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf from denying Plaintiff YCT's status as a registered student organization or any of the benefits, privileges or access to speech forums pertaining to RSO status;

E. Actual compensatory damages for infringing Plaintiff's exercise of its First and Fourteenth Amendment rights;

F. Actual compensatory damages in the amount of mandatory student fees paid by each of Plaintiff YCT's student members, including Mr. Shepherd, that was collected pursuant to a content- and viewpoint-based policy that infringed Plaintiffs' First Amendment rights;

G. Nominal damages for the violation of Plaintiffs' First and Fourteenth Amendment rights;

H. Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

I. All other further relief to which Plaintiffs may be entitled.

Respectfully submitted this 30th day of January, 2018.

s/ Warren V. Norred

Warren V. Norred (TX Bar No. 24045094)
NORRED LAW, PLLC
200 E. Abram, Suite 300
Arlington, TX 76010
(817) 704-3984
(817) 549-0161 (fax)
wnorred@norredlaw.com

Tyson C. Langhofer (AZ Bar No. 032589*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (fax)
tlanghofer@ADFlegal.org

David A. Cortman (GA Bar No. 188810*)
Travis C. Barham (GA Bar No. 753251*)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., Suite D-1100
Lawrenceville, Georgia 30043
(770) 339–0774
(770) 339–6744 (fax)
dcortman@adflegal.org
tbarham@ADFlegal.org

Attorneys for Plaintiffs

*Motions for *Pro Hac Vice* Admission forthcoming

## VERIFICATION OF COMPLAINT

I, David Shepherd, a citizen of the United States and a resident of the State of Texas, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this 29th day of January, 2018.

David Shepherd

37